In the Matter of DEAN HYLAND, an Attorney, Respondent. BAR ASSOCIATION OF ERIE COUNTY, Petitioner.

Fourth Department, September 14, 1967.

*John B. Walsh* for petitioner.

*Dean Hyland,* respondent in person.

*Per Curiam.* Respondent was admitted to the Bar by this court on October 6, 1921. In 1926 he married one Leona Rzoska, who was similarly admitted to the Bar on January 18, 1934, and died in 1953. A proper understanding of some of the charges against respondent requires a brief description of the Rzoska family. Leona Rzoska Hyland was the daughter of Frank and Josephine Rzoska. Their surname was changed to Ruskin by court order of August 30, 1934 as amended by order of August 20, 1941. Mrs. Hyland had three siblings — Elaine Rzoska (Trowbridge), Henry Rzoska, and Janet Rzoska. The parents and all of the children, except Elaine Trowbridge, are now deceased.

Commencing in the middle 1930s respondent and his wife acquired various tracts of land in several towns in Erie County and through the following years carried on an extensive business of selling lots in these subdivided acres. Title to the lands, however, was placed in the names of either Elaine Ruskin or Henry Ruskin. On June 16, 1936 the latter two executed a power of attorney authorizing respondent and his wife, Leona, to sell any realty owned by the executors of the power and execute deeds therefor. Henry Ruskin died in 1963 and his testimony was not available on the trial herein. Elaine Ruskin (Trowbridge) testified, however, that she had no knowledge that she had acquired any realty in Erie County or that she had at any time signed a power of attorney. She testified that she never read any of the documents presented to her by respondent for her signature.

Elaine Ruskin (Trowbridge) by deed dated March 1, 1946 and recorded four days later purportedly conveyed to "Louise Ruskin" some 548 lots in the Towns of Cheektowaga, West Seneca, and Evans in Erie County. Elaine Ruskin had been married the preceding month (February 14, 1946) to Trowbridge. It is the contention of respondent that the name "Louise Ruskin" in reality was an assumed name of his mother-in-law, Josephine Ruskin; that she believed that because of her daughter's marriage the latter could no longer be controlled and that with respondent's consent this fictitious character was created.

Upon all the proof we agree with the finding of the Trial

Judge " that Louise Ruskin was not an assumed name or alter ego of Josephine Ruskin, but rather that it was a completely fictitious and fictional name used by (respondent and his wife) for the conduct as it suited their convenience of real estate and other business " on behalf of respondent, his wife and members of the Ruskin family. In support of this finding we recite some of the proof.

It has been heretofore stated that in 1936 Elaine and Henry Ruskin executed a power of attorney to respondent and his then wife. Interlined in the body of the instrument is the name " Louise Ruskin ". Similarly the same name has been inserted in the acknowledgment and the name is signed at the end of the document. Respondent frankly conceded that the name " Louise Ruskin " was signed by his then wife and not by Josephine Ruskin who he claimed had adopted the assumed name. Moreover, there is uncontroverted proof that the signature was made with a ball point pen and such were not in use until some time after 1945—years after the original power had been executed in 1936 but shortly before this fictitious character first appears in 1946. Subsequently other realty was conveyed by divers parties to " Louise Ruskin ".

Respondent testified that his then wife signed the name " Louise Ruskin " to several hundred blank deeds without revealing that she was so doing by virtue of the power of attorney. We relate one sample of the use respondent made of these deeds. Exhibit 47 is a deed from " Louise Ruskin " and others, including respondent, conveying realty in the Town of West Seneca and recorded in April, 1959. Respondent testified that the body of the deed was in his handwriting; that the several signatures were acknowledged at his instruction by his secretary who was a Commissioner of Deeds; that the signature " Louise Ruskin " was in the handwriting of his wife, Leona Hyland, who, as heretofore stated, died in 1953. When asked if " Louise Ruskin " had appeared before the official taking the acknowledgment respondent's reply was " She couldn't have. She had been dead six years then."

There is overwhelming proof that respondent's present contention that Josephine Ruskin and " Louise Ruskin " is one and the same person is without validity. Elaine Ruskin Trowbridge testified that she had no sister by the name of Louise and to her knowledge her mother with whom Elaine had always lived was never known by the name " Louise ". In 1956 respondent opened a savings bank account in the name of " Louise Ruskin ". Therein she was described by respondent as the daughter of Josephine Ruskin and born on August 23,

1901 — some 21 years after the birth of Josephine Ruskin in 1880. In May, 1966 the balance in this account of approximately $6,000 was transferred to respondent's personal account in the same bank. Josephine Ruskin had died a short time before, but no tax waiver was obtained and the bank was not informed by respondent that she had any interest in the fund.

Moreover, in a litigation that was considered by this court (*Allen* v. *Hyland,* 15 A D 2d.721) respondent testified in answer to questions put by the trial court that "Louise Ruskin" was his sister-in-law and that Josephine Ruskin was the mother of Louise. Lastly, respondent testified that from 1936 to the present time all income or profits from the sale of realty and expenses connected therewith, whether title thereto was in the name of some member of the Ruskin family, including "Louise Ruskin", was reported in the income tax returns of the law partnership of respondent and his wife during the lifetime of the latter and thereafter in respondent's personal tax returns.

The reason for the creation by respondent and his late wife of this fictional person is not difficult to ascertain when the promotional activities of the Hylands in the sale of lots are considered. Exhibits 22 to 25, inclusive are copies of maps of various subdivisions with the law firm name of Hyland and Hyland appearing prominently thereon. Printed on each in one form or another were messages appealing to those with the pioneer spirit to purchase a lot and erect any kind of temporary living quarters thereon. It appears that the Hylands advertised extensively in newspapers and other media. The testimony of a dozen or more witnesses called by petitioner establishes respondent's method of operation.

There is ample proof to support the findings of the Trial Judge that lots were sold under a lease option agreement. Purchasers were required to execute a preliminary questionnaire, note, bond and mortgage, and blank confession of judgment. Some purchasers were given a so-called temporary deed to enable them to obtain a building permit, but in such cases the purchasers were required to execute a deed that reconveyed the property. This instrument then could be recorded if the purchaser perchance recorded the deed conveying the realty to him. Some of the purchasers discovered that their lots were on imaginary or paper streets and building permits were denied because the development lacked streets formally dedicated to the town or a sewer system. If the purchaser failed to continue monthly payments the confession of judgment was used to enter judgment. Some of these were compromised and

others were vacated following court action by the purchasers.

Carol Boyler in 1964 owned property on Fourth Street in Buffalo. She and her husband conferred with respondent and agreed to purchase realty in the Town of Evans from "Louise Ruskin". The Boylers did not have the required down payment of $500 and respondent agreed to take a second mortgage on the Buffalo property as security therefor. Instead he had the Boylers execute a deed conveying the property to his second wife, Mary Hyland. Respondent told Mr. Boyler it was unnecessary for him to retain a lawyer. After litigation in Supreme Court, Erie County, the deed was declared void and Mary Hyland was ordered to reconvey the property to Mrs. Boyler.

When many of these defrauded purchasers sought relief they and their respective attorneys were unable to locate any "Louise Ruskin". Elaine Ruskin Trowbridge, who through the years lived with her mother, testified that many persons came to their home or telephoned seeking to locate "Louise Ruskin", but neither of them had any knowledge of such a person.

We have reviewed herein only a few of the machinations of respondent over a period of many years. The findings of the Trial Judge are amply supported by the proof. We conclude that respondent has defrauded various and sundry persons in the sale of realty; that by the creation of the fictional person "Louise Ruskin" and the indiscriminate use of that name in conveyances of property respondent has caused the title thereto to be clouded and cast in doubt. Lastly, he has given false testimony under oath in this and other actions and proceedings in courts of record of this State. He should be disbarred.

WILLIAMS, P. J., BASTOW, GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Order of disbarment entered.